IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JOSE SANTO CABALLERO,           )
                                )
      Plaintiff,                )
                                )
           v.                   )   1:11cv622 (JCC/JFA)
                                )
AMERICAN MORTGAGE NETWORK,      )
*et al.,*                       )
                                )
      Defendants.               )

**M E M O R A N D U M   O P I N I O N**

This case arises from a residential mortgage foreclosure, which Plaintiff, the former owner of the property, seeks to overturn due to alleged untoward conduct on the part of the mortgage lenders and their associates.  This matter is before the Court on defendants[1] IBM Lender Business Process Services, Inc. ("LBPS"), Federal National Mortgage Association ("Fannie Mae"), and Mortgage Electronic Registration System's ("MERS") (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil procedure 12(b)(6), for failure to state a claim, [Dkt. 2] (the "Motion").  For the following reasons, the Court will grant the Motion to Dismiss as to Plaintiff's federal law claims and remand the state-law claims.

---

[1] Named defendants American Mortgage Network, Chase Bank, and Friedman & MacFayden and unnamed defendants John Does 1-50 do not join in the Motion and have not yet appeared before this Court.  According to the moving Defendants, Plaintiff has not served the non-moving defendants.  [Dkt. 1.]

**I.  Background**

A.   <u>Factual Background</u>

i.   <u>The Parties</u>

Plaintiff Jose Santo Caballero ("Plaintiff") is a resident of Woodbridge, Virginia.  (Complaint [Dkt. 1-4] ("Compl.") ¶ 4.)  Defendant American Mortgage Network ("American Mortgage") is, according to Plaintiff's Complaint, a foreign corporation in the business of servicing mortgage loans. (Compl. ¶ 5.)  Defendant Chase Bank ("Chase") is a foreign corporation in the business of servicing mortgage loans. (Compl. ¶ 6.)  Defendant LBPS is a foreign corporation in the business of servicing mortgage loans.  (Compl. ¶ 7.)  Defendant Fannie Mae is a foreign corporation in the business of originating mortgage loans either directly or indirectly. (Compl. ¶ 8.)  Defendant Friedman & MacFayden ("F&M") is a Maryland corporation.  (Compl. ¶ 9.)  Defendant MERS is a Virginia corporation in the business of acting as a beneficiary and nominee for mortgage lenders and their loan-servicing agents.  (Compl. ¶ 10.)  Unnamed defendants John Does 1-50 are unknown investors in the primary and secondary mortgage markets. (Compl. ¶ 11.)

ii.   <u>The Facts Giving Rise to the Case</u>

According to his Complaint, on February 17, 2008, Plaintiff signed a promissory note (the "Note") secured by a

2

deed of trust (the "Deed of Trust") for Plaintiff's residence, (Compl. ¶ 4), real property located in Woodbridge, Prince William County, Virginia (the "Property") in favor of American Mortgage.[2]  (Compl. ¶ 12; Ex. A, B.)  After closing the Property purchase, Plaintiff's loan, as evidenced by the Note, was sold for cash in a securitization.  (Compl. ¶ 13.)  The Deed of Trust lists American Mortgage as lender and Walker Title & Escrow Company as initial trustee for the benefit of MERS, and its successors and assigns, as beneficiary.  (Ex. B.)

In 2009, Plaintiff experienced unspecified hardships and requested a loan modification from Chase.  (Compl. ¶ 14.) Chase advised Plaintiff to sell the Property.  (Compl. ¶ 15.) On August 13, 2009, Plaintiff listed the Property for sale.  *Id.* On September 9, 2009, Plaintiff received a purchase offer for the Property, which was approved by Sandra Kosey of Chase. (Compl. ¶ 16.)  The "sale was set for" February 15, 2010, *Id.*, but apparently was not effected, because in September 2010, Chase sold the servicing rights to Plaintiff's loan to LBPS. (Compl. ¶ 17.)  Chase informed Plaintiff that "they" would have to begin a new short-sale approval request with LBPS, the new servicer of Plaintiff's loan.  *Id.*

---

[2] The Note and the Deed of Trust are attached to the Complaint as Exhibits A and B, respectively (and contained within [Dkt. 1-4]).  Plaintiff's Complaint dates the Note as February 17, 2008, but the date on the Note is February 27, 2008.  (Ex. A.)  The Dee of Trust is undated, but the Substitution of Trustee Instrument states the date of the Deed of Trust as February 27, 2008.  (Ex. E.)  "Courts considering a Rule 12(b)(6) motion[] may rely upon not only the complaint's allegations, but also those documents attached as exhibits." *Little v. Bank of Am., N.A.*, 769 F. Supp. 2d 954, 960 n.1 (E.D. Va. 2011).

3

Plaintiff sought LBPS's approval on September 15, 2010, and repeatedly called LBPS during the period from September 16, 2010, to October 30, 2010.  (Compl. ¶ 18.)  On November 1, 2010, Plaintiff sent three purchase offers to LBPS, and at LBPS's request re-sent those offers on November 8, 2010.  (Compl. ¶¶ 18-19.)

On November 17, 2010, Johnie R. Muncy and F&M Services, LC, were appointed substitute trustee under the Deed of Trust.  (Compl. ¶ 20; Ex. E.)  The Substitution of Trustee instrument was prepared by F&M.  (Ex. E.)  On November 18, 2010, F&M sent to Plaintiff a letter and notice of intent to foreclose.  (Compl. ¶ 20.)  On November 20, 2010, Plaintiff called LBPS and was told by an unknown representative of LBPS that the company was extremely busy and would issue an authorization and approval of a sale when LBPS was free.  (Compl. ¶ 21.)

F&M conducted a trustee sale of the Property on December 29, 2010.  (Compl. ¶ 23.)  The property was sold and a trustee's deed[3] for the sale was recorded on January 7, 2011.  (Compl. ¶ 23.)

---

[3] The trustee's deed is identified as Exhibit F to Plaintiff's Complaint.  The copy of the Complaint provided to the Court did not include an Exhibit F, however.  Defendants attached the trustee's deed as an exhibit to their Memorandum in Support, [Dkt. 3-1], and Plaintiff did not challenge the authenticity of the exhibit.  "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment."  *Gasner v.*

B.    Procedural Background

On June 7, 2011, Plaintiff filed suit in the Circuit Court for Prince William County against the moving Defendants and non-moving defendants, and the case was given case number CL11-3356.  [Dkt. 1-4.]  Defendants removed the case to this Court on June 8, 2011, pursuant to 28 U.S.C. § 1441.  [Dkt. 1.] Defendants filed their Motion on June 15, 2011.  [Dkt. 2.] Plaintiff opposed the Motion on June 27, 2011, [Dkt. 8], and Defendants replied on July 1, 2011.  [Dkt. 9.]

Defendants' Motion is before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels

---

*Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).  Plaintiff subsequently provided the Court with a copy of Exhibit F.  [Dkt. 10.]

and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.  Analysis

Plaintiff's Complaint alleges nine counts (each a "Count").  Count I is "Equity action to set aside foreclosure," against all defendants; Count II is "Fraud--through the use of forgery," against F&M and LBPS; Count III is "Breach of Virginia foreclosure statutes Chapter 55 and Chapter 4," against F&M and LBPS; Count IV is "Failure to provide proof of standing to foreclose," against F&M and LBPS; Count V is "Violation of Home Ownership Equity Protection Act," against American Mortgage, Fannie Mae, and LBPS; Count VI is "Civil RICO," against all defendants; Count VII is "Violations of Virginia Consumer Protection Act by defendants' false statements, failure to disclose, and violations of TILA, Reg. Z, RESPA, Reg. X, and FDCPA," against all defendants; Count VIII is "Defendants breach of good faith and fair dealing under the Deed of Trust," against LBPS and Chase; and Count IX is "Slander of Title" and "Declaratory Judgment (Action to quiet title)," against all defendants.

The Court will address Plaintiff's federal law Counts in turn and then address whether it will exercise supplemental jurisdiction over Plaintiff's state-law Counts.

A.   Count V: Violation of Home Ownership Equity Protection Act

In Count V of his Complaint, Plaintiff alleges violations of the Home Ownership and Equity Protection Act

("HOEPA"), 15 U.S.C. § 1639, *et seq*.   (Compl. ¶¶ 74-77.)
Plaintiff asserts Count V against only LBPS, American Mortgage,
and Fannie Mae.   Specifically, Plaintiff claims that he was
required to pay fees in excess of the statutory limit, (Compl. ¶
75), and that the applicable defendants did not provide the
required disclosure under 15 U.S.C. § 1639(a)(1), (Compl. 76).
Defendants LBPS and Fannie Mae argue that Count V fails to state
a claim under HOEPA and that Count V is time barred.
(Memorandum in Support [Dkt. 3.] ("Mem.") at 10-11.)

       HOEPA is a part of the Truth in Lending Act ("TILA")
requiring certain disclosure and other standards for residential
mortgage loans.   *McAnelly v. PNC Mortg.*, No. 2:10-cv-02754, 2011
WL 2366680, at *2 (E.D. Cal. June 08, 2011).   "Violations of the
disclosure requirements by a creditor give rise to a cause of
action."   *Id*.   A HOEPA action "must be brought within one year
'from the date of the occurrence of the violation.'"   *Hood v.
Aurora Loan Servs.*, Civil No. CCB-10-11, 2010 WL 2696755, at *2
(D. Md. July 6, 2010) (quoting 15 U.S.C. § 1640(e)).   "The date
of the violation is 'no later than the date the plaintiff enters
the loan agreement.'"   *Id*. (quoting *Tucker v. Beneficial Mortg.
Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006)).   Put another
way, "[t]he 'date of the occurrence' is the date the transaction
is consummated, which, in the case of a mortgage loan, is the

date that the plaintiff closed on the loan." *McAnelly*, 2011 WL 2366680, at *2.

Here, Plaintiff entered into the Note on February 17, 2008.  (Compl. ¶ 12.)  Plaintiff filed this case in June of 2011.  [Dkt. 1.]  Accordingly, any HOEPA claim is time-barred and will be dismissed, unless the doctrine of equitable tolling applies[4].  In his opposition, Plaintiff argues that the statute of limitations for TILA, and thus, HOEPA, can be equitably tolled and should be here due to "[f]raudulent concealment" of the "TILA violation."  (Opposition [Dkt. 8] ("Opp.") at 7.)  Specifically, Plaintiff states that "Defendants concealed the loan payment structure . . . by not providing the disclosures needed."  (Opp. at 7.)

In the Fourth Circuit, to invoke the doctrine of fraudulent concealment as a basis for equitable tolling, a plaintiff must show: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995).  To

---

[4] The Court assumes, *arguendo*, that equitable tolling applies to Plaintiff's HOEPA, TILA, and RESPA claims.  The Fourth Circuit has not spoken on the matter, and there appears to be a difference of opinion among courts as to whether TILA and RESPA's statutes of limitations are jurisdictional and, thus, not subject to equitable tolling.  *See, e.g., Duke v. H & R Block Bank*, No. 10cv01927, 2011 WL 1060656, at *6 n.6 (D. Colo. Mar. 8, 2011); *Cordon v. Aurora Loan Servs., LLC*, No. 1:10cv645, 2010 WL 3418214, at *4 (E.D. Va. Aug. 26, 2010).

satisfy the first element of this test, a plaintiff must present evidence of affirmative "acts of concealment [by the defendant asserting the statute of limitations defense]." *Id*. at 126 (internal citation omitted).  "Those acts, however, need not be separate and apart from the acts of concealment involved in the [applicable] violation." *Id*.

Here, Plaintiff has alleged no affirmative acts of concealment by LBPS and Fannie Mae, the applicable moving Defendants.  Plaintiff states only that unspecified "Defendants" concealed the loan payment structure. (Opp. at 7.)  Plaintiff claims that "he was not told about the accurate terms of the loan," was given inaccurate TILA disclosures, and was not provided with all required documents.  (Opp. at 7.)  These are alleged omissions, perhaps, but not affirmative acts of *concealment* of the facts that give rise to a HOEPA claim, but merely recitations of the alleged facts themselves.  Moreover, Plaintiff has alleged that certain defendants committed TILA violations, but has not alleged which defendant did what.  And, significantly, Plaintiff has alleged no due diligence on his part.  He does not allege, for example, that he ever asked for any disclosures.  Thus, "the delay in filing the TILA claim is attributable to [plaintiff's] ignorance of the law, not to any affirmative act of concealment by defendant." *Barnes v. West,*

*Inc.*, 243 F. Supp. 2d 559, 566 (E.D. Va. 2003).  Accordingly,
the Court will not equitably toll the statute of limitations.

      B.   Count VI: Civil RICO

      In Count VI of his Complaint, Plaintiff alleges that
Defendants' conduct violated a federal civil Racketeer
Influenced Corrupt Organization ("RICO") statute, 18 U.S.C. §
1962(c), as it "was part of a pattern of continuous violation of
criminal violations and racketeering activity."  (Compl. ¶ 79.)
Plaintiff also alleges that "[b]y Virginia Code § 8.1A-103,
Plaintiff alleges UCC violations pertaining to mail fraud, bank
fraud, and RICO."  *Id.*  Plaintiff asserts Count VI against all
defendants.

      "[T]o state a claim for a federal civil RICO
violation, [the p]laintiff must show that the [d]efendants
conducted an enterprise through a pattern of racketeering
activity and that she was injured in her business or property as
a result of that pattern."  *Delk v. ArvinMeritor, Inc.*, 179 F.
Supp. 2d 615, 626-27 (W.D.N.C. 2002) (citations omitted).  Among
other things, a plaintiff must allege that defendants acted in
"an enterprise, defined as an ongoing organization, formal or
informal, in which the various associates function as a
continuing unit."  *Id.* at 627 (citations omitted).  Plaintiff
also "must show a pattern of racketeering activity.  At a
minimum, this requires that she [allege] that each RICO

11

[d]efendant committed at least two acts of racketeering activity within a ten-year period." *Id*. (citation omitted).

Here, Plaintiff has failed to plead facts that could support his civil RICO claim.  Plaintiff has alleged no facts supporting any ongoing enterprise, nor has he alleged any facts to support a pattern of racketeering activity.  Plaintiffs allegations that "[b]y Virginia Code § 8.1A-103, Plaintiff alleges UCC violations pertaining to mail fraud, bank fraud, and RICO," (Compl. ¶ 79), is insufficient.  Plaintiff does not allege what are those "UCC violations," and Virginia Code § 8.1A-103 states only how the Uniform Commercial Code is to be construed and applied.  Plaintiff argues in opposition that "the Defendants acted together to keep from him certain information regarding his loan in an effort to create greater profits from Plaintiff." (Opp. at 9.)  Plaintiff further argues that "[t]he elements of a RICO claim are satisfied" because "the payment of the premium was not disclosed and the cost of the premium is passed on to the borrower in the form of a higher interest rate; and the broker was fully aware that Plaintiff was expecting Defendants to provide the lowest possible interest rate." *Id*. Even if this additional detail in Plaintiff's opposition was sufficient to state a civil RICO claim, which it is not, it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Rossman v. Lazarus*, No.

12

1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008)
(quoting *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp.
2d 909, 917 n.9 (E.D.Va. 2004)).  Plaintiff simply has not
alleged any enterprise or a pattern of racketeering activity.

Plaintiff alleges that "the Hobbs Act applies" to
defendants' conduct.  (Compl. ¶ 80.)  The Hobbs Act, codified at
18 U.S.C. § 1951, however, is "a criminal statute.  It imposes
criminal penalties of fines and imprisonment for obstructing,
delaying, or affecting commerce by robbery or extortion." *Jack
v. Stubblefield*, No. 5:09cv00046, 2009 WL 1809931 at *2 (W.D.
Va. June 22, 2009) (citing 18 U.S.C. § 1951(a)).  As a criminal
statute, "the authority to enforce § 1951 lies with government
authorities and not private citizens." *Id.* (citations
omitted).  Accordingly, Count VI will be dismissed for failure
to state a claim.

    C.    <u>Count VII: Violation of Virginia Consumer
        Protection Act by Defendants' False Statements,
        Failure to Disclose, and Violations of TILA, REG.
        Z, RESPA, REG. X, AND FDCPA</u>

In Count VI of his Complaint, Plaintiff alleges that
defendants violated the Truth in Lending Act, 15 U.S.C. § 1601,
*et seq.* ("TILA"), (Compl. ¶ 84), Regulation Z, 12 C.F.R. § 226
("Reg. Z"), (Compl. ¶ 84), the Real Estate Settlement Procedures
Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), (Compl. ¶ 90),
Regulation X, 24 C.F.R. § 3500 ("Reg. X"), (Compl. ¶ 90), and
the Fair Debt Collections Practice Act, 15 U.S.C. § 1692, *et*

*seq.* (the "FDCPA"), (Compl. ¶ 94).[5]  Plaintiff asserts Count VI

against all defendants.  Defendant argue that these claims are

either barred by the applicable statute of limitations, or they

otherwise fail to state a claim.  (Mem. at 11-12.)  The Court

will address each in turn.

> i.     TILA

A TILA action, like a HOEPA action as stated above,

"must be brought within one year 'from the date of the

occurrence of the violation.'"  *Hood*, 2010 WL 2696755, at *2

(quoting 15 U.S.C. § 1640(e)).  "The date of the violation is

'no later than the date the plaintiff enters the loan

agreement.'"  *Id*. (quoting *Tucker*, 437 F. Supp. 2d at 589).

Here, Plaintiff entered into the Note on February 17,

2008, (Compl. ¶ 12), and brought this case in June of 2011,

[Dkt. 1].  Though Plaintiff does not specifically argue for

equitable tolling with respect to the TILA claim in Count VI, to

the extent that he does, equitable tolling is inappropriate for

the same reasons as set forth with respect to Plaintiff's HOEPA

claim above.

> ii.    Reg. Z

As to Plaintiff's Reg. Z claim, the same one-year

statute of limitations applicable to TILA claims applies to

---

[5] In Count VI, Plaintiff also alleges that defendants violated the Virginia Consumer Protection Act, Va. Code § 59-1-196, *et seq*. (the "VCPA"), (Compl. ¶ 83), but the Court does not address the VCPA claim as it is a state-law claim.

alleged violations of Reg. Z.  *Cordon v. Aurora Loan Servs., LLC*, No. 1:10cv645, 2010 WL 3418214 at *6 (E.D. Va. Aug. 26, 2010) (citing 12 C.F.R. § 226.1(e)).  Thus, Plaintiff's claim is time-barred as stated above with respect to his TILA claim, and equitable tolling is again inapplicable for the same reasons.

  iii.    RESPA and Reg. X

  Plaintiff states his RESPA and Reg. X claims under 12 U.S.C. § 2606 and 24 C.F.R. 3500.14, respectively.  (Compl. ¶¶ 91-92.)  12 U.S.C. § 2606 states what transactions are exempted from RESPA, and 24 C.F.R. 3500.14, Reg. X, prohibits kickbacks and unearned fees.  "Pursuant to 12 U.S.C. § 2614, a 'RESPA claim brought by a private litigant must be brought within [one] year from the date of the occurrence of the violation.'"  *Hood*, 2010 WL 2696755, at *3 (quoting *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 485 (D. Md. 2009)).  This one-year statute of limitations applies to the anti-kickback provision of RESPA.  *See, e.g.*, *Vasconcellos v. Wells Fargo Home Loan Mrtg., Inc.*, No. 10-757, 2010 WL 3732232 at *4 (D.Or. Sept. 20, 2010).  "The 'date of the occurrence of the violation' is the date on which the borrower accepts the creditor's extension of credit."  *Moseley v. Countrywide Home Loans, Inc.*, No. 7:09cv210, 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010).  Thus, for the same reasons set forth above, Plaintiff's RESPA claim is time-barred and equitable tolling is inapplicable.

Plaintiff also alleges that defendants violated RESPA by failing to respond to Plaintiff's "qualified written request" within the appropriate time period. (Compl. ¶ 93.) 12 U.S.C. § 2605(e) states that "*[i]f* any servicer of a federally related mortgage loan *receives a qualified written request from the borrower* . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." (emphasis added). To the extent Plaintiff asserts a cause of action under this provision independent of his other RESPA claims, this too must fail. Plaintiff has not pleaded that, or when, he sent a qualified written request to which any defendant failed to respond. Thus, he has failed to state a claim under 12 U.S.C. § 2605(e).

### iv. FDCPA

Plaintiff alleges defendants violated certain provisions of the FDCPA, namely 15 U.S.C. § 1692c(a)(1), § 1692e(10), § 1692g(b), and § 1692e(2)(A). (Compl. ¶ 94.) § 1692c(a)(1) states that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." §

16

1692g(b) states that "[i]f the consumer notifies the debt collector in writing within [the required time period] that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt."  § 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt."

Plaintiff has failed to state a claim under any of these statues.  As to § 1692c(a)(1), Plaintiff has not pleaded that any debt collector contacted him at any time.  As to § 1692e(10), Plaintiff asserts that "defendants" used "false, deceptive, or misleading representation[s] or means in connection with the collection of the alleged debt," (Compl. ¶ 94), but does not plead any facts supporting that conclusory assertion.  Plaintiff has not pleaded any facts to show which of the numerous defendants used such alleged representations or means, what the representations or means were, or how the representations or means or were false or deceptive.  As to § 1692g(b), Plaintiff asserts that "defendants" "[c]ontinu[ed] collection activities without providing verification of the debt to Plaintiffs [sic] after they requested verification of the debt in writing."  (Compl. ¶ 94.)  Plaintiff, however, has not pleaded that he notified anyone that the debt or any portion thereof was disputed, nor has he asserted that the debt *was in fact disputed*.  Moreover, Plaintiff has not pleaded from whom or

17

when he requested "verification" of the debt.  And, as to §
1692e(2)(A), Plaintiff asserts that "defendants" "[f]alsely
represent[ed] the character, amount, and status of the alleged
debt," but has not pleaded any facts supporting which of the
numerous defendants did so, or when and how they did, nor has he
pleaded that the debt claimed by whichever defendant was in fact
false.  Accordingly, Plaintiff's claim under the FDCPA will be
dismissed.

> D.   Remand of Plaintiff's State-law Claims

As the Court will dismiss Plaintiff's federal law
claims as stated above, Count V (HOEPA), Count VI (Civil RICO),
and Count VII (TILA, Reg. Z, RESPA, Reg. X, and the FDCPA), the
remaining Counts in Plaintiff's Complaint consists only of
Virginia state-law claims.  Dismissal of the federal law claims
eliminates any federal question jurisdiction.  Federal subject
matter jurisdiction may exist, however, when there is diversity
of citizenship between the parties and more than $75,000 in
controversy, pursuant to 28 U.S.C. § 1332.

Federal courts have long interpreted § 1332 to require
"complete diversity" of citizenship.  *Carden v. Arkoma Assocs.*,
494 U.S. 185, 187 (1990) (citation omitted).  Thus, to satisfy §
1332's requirement of complete diversity, the "citizenship of
each plaintiff [must be] diverse from the citizenship of each
defendant."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).
Plaintiff is a "resident" of Virginia.  (Compl. ¶ 4.)  Though

18

the other defendants appear to be diverse to Plaintiff,
according to Plaintiff's Complaint, MERS is a Virginia
corporation, as its last known principal place of business is
located in Virginia, (Compl. ¶ 10).  *See Cent. W. Va. Energy
Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th
Cir. 2011) ("For federal diversity jurisdiction purposes, a
corporation is a citizen of the states in which it has been
incorporated and in which it has its principal place of
business.")  Accordingly, there is not complete diversity of
citizenship as required by 28 U.S.C. § 1332(a), and "[g]iven
that the federal claims have been dismissed, the Court must
determine whether to continue to exercise supplemental
jurisdiction over the state law claims, or remand the case to
state court."  *J.S. ex rel. Simpson v. Thorsen*, 766 F. Supp. 2d
695, 712 (E.D. Va. 2011).

The doctrine of supplemental jurisdiction provides
that federal courts have discretion to retain or dismiss non-
federal claims when the federal basis for an action is no longer
applicable. *See* 28 U.S.C. § 1367 (codifying *United Mine Workers
of America v. Gibbs*, 383 U.S. 715 (1966)).  A district court has
discretion to dismiss a case where the court "has dismissed all
claims over which it has original jurisdiction."  28 U.S.C. §
1367(c)(3).  "[U]nder the authority of 28 U.S.C. § 1367(c),
authorizing a federal court to decline to exercise supplemental

jurisdiction, a district court has inherent power . . . in cases removed from State court[] to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001).  In the Fourth Circuit, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  Courts consider a number of factors in making this discretionary determination: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998)).  As the *Shanaghan* Court states, "the doctrine of supplemental jurisdiction is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."  58 F.3d at 110 (citations omitted).

Here, the Court has dismissed the claims over which it had federal question jurisdiction and, as stated above, the parties are not completely diverse.  Given the nature of the state law claims at issue and in the interests of comity, this Court declines to exercise supplemental jurisdiction over any remaining state-law claims.  It would not be drastically

inconvenient or unfair to the parties to remand, the remaining claims do not implicate any significant issues of federal policy and, and given that the case is at an early stage of litigation, with discovery having yet to begin, it would not offend notions of judicial economy to remand the case to the state court from which it was removed.  Therefore, all remaining state-law claims, *i.e.*, Counts I, II, III, IV, VII (only as to the VCPA claim), VIII, and IX, will be remanded to the Circuit Court for Prince William County.  The Court notes that nothing in the record appears to bar Plaintiff from pursuing the Virginia state litigation after remand, and therefore Plaintiff is not without a forum in which to seek redress on his Virginia state-law claims.

### IV.  Conclusion

For these reasons, the Court will grant the Motion to Dismiss as to Plaintiff's federal law claims and remand the state-law claims.

An appropriate Order will issue.

/s/
_____
James C. Cacheris

August 8, 2011                    UNITED STATES DISTRICT COURT JUDGE
Alexandria, Virginia